IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| ASHLEY CHARLES BURRELL | § | |
| VS. | § | CIVIL ACTION NO. 1:15cv266 |
| DIRECTOR, TDCJ-CID | § | |

## MEMORANDUM OPINION

Petitioner Ashley Charles Burrell, an inmate confined within the Texas Department of Criminal Justice, Correctional Institutions Division. filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## Factual Background

In 2012, following a jury trial in the 75th District Court of Liberty County, Texas, petitioner was convicted of aggravated robbery. He was sentenced to 74 years of imprisonment. The conviction was affirmed by the Texas Court of Appeals for the Thirteenth District. *Burrell v. State*, 2012 WL 3612500 (Tex.App.–Corpus Christi Aug. 23, 2012). The Texas Court of Criminal Appeals refused a petition for discretionary review. *Burrell v. State*, No. PD-1516-12.

Petitioner subsequently filed a state application for writ of habeas corpus. The Court of Criminal Appeals denied the application without written order based on the findings of the trial court. *Ex parte Burrell*, WR-80,596-01.

## Grounds for Review

Petitioner asserts the following grounds for review: (1) he is actually innocent based upon newly discovered evidence; (2) he received ineffective assistance of counsel because counsel: (a) failed to investigate the facts of the case, the prosecutor's file and the evidence against petitioner; (b) failed to properly cross-examine witnesses; (c) denied petitioner the chance to testify and (d) failed to investigate, interview and subpoena an alibi witness; (3) he received ineffective assistance of counsel on appeal because counsel did not raise claims based upon ineffective assistance of counsel at trial; (4) he received ineffective assistance of counsel during the punishment phase of the

proceedings because counsel failed to have family members testify and failed to object to an improper argument by the prosecution; (5) he received ineffective assistance of counsel because counsel failed to tell him about a plea offer; (6) he received ineffective assistance of counsel because counsel: (a) failed to investigate DNA evidence; (b) failed to investigate prosecution witnesses; (c) failed to make an opening statement explaining petitioner's alibi defense; (d) failed to establish petitioner's alibi and identity defenses and (e) failed to object to improper argument by the prosecution; (7) he received ineffective assistance of counsel because counsel failed to investigate his past; (8) appellate counsel was ineffective for failing to raise properly preserved claims based upon prosecutorial misconduct; and (9) the prosecutor acted improperly during closing argument by: (a) stating each bullet represented a potential victim; (b) misstating the sentencing range and (c) urging enough is enough and that no other jury would be able to punish petitioner.

<u>Evidence at Trial</u>

In his appellate brief, petitioner described the evidence at trial as follows:

Dezzarie Mayhew testified that she was employed by Subway in Cleveland, Liberty County, Texas on January 31, 2011 when the store was robbed. Ms. Mayhew testified that she was the only employee on duty at the time of the robbery. Reynaldo Aguilar, district supervisor for Subway, testified that the store was equipped with a security system that was operating at the time of the robbery. Ms. Mayhew was shown the video and identified a customer that she was serving at the time the robbers came into the store. Ms. Mayhew testified that two men entered the store and said, "This is a robbery."

One man was reported by Ms. Mayhew as wearing a white hoodie and the other a red hoodie. The man in the red hoodie displayed a gun that she thought was a .357. Ms. Mayhew testified that the man in the white hoodie was hovering over her saying, "Open the safe." She testified that the man in the red hoodie took an unknown sum from the cash box. Shortly thereafter, Ms. Mayhew testified that the man in the red hoodie started yelling "Cops" and ran out the front door where a police officer was present. Ms. Mayhew testified that she ran to the police officer and got into his vehicle. After the police officer left to chase the man in the red hoodie, Ms. Mayhew testified that she got out of the car and went into the nearby H & R Block.

On cross-examination, Ms. Mayhew testified that the man in the red hoodie wore a cloth over his face from the eyes down. She further testified that she was never asked to identify any suspects in this case and none was made during her testimony at trial.

Clinton Ryans testified on direct examination that he went to the Subway in Cleveland for dinner on January 31, 2011. He testified that while in the store two men came in and the one with the gun told him to get on the floor. Mr. Ryans

testified that both men had their faces covered and he ran out of the store across the parking lot. He testified that he ran to the HEB and called 911 and that he did not know [petitioner].

Officer Paul Young testified that he was employed by the City of Cleveland and that he was on duty on January 31, 2011 when he responded to a robbery call. The officer testified that upon arrival he observed what appeared to be two black males behind the counter along with a white female. Officer Young testified that he parked his vehicle in a dark area and set up observation with his gun drawn when he observed a black BMW parked on the drive-through. He further observed a female running out of the store and a moment later the man in the red hoodie ran out the same door. The man in the red hoodie was identified by Officer Young as a black male and he ran and jumped into the waiting getaway vehicle and it sped off.

The black BMW was observed by the officer to take a right turn into the alley behind the Subway where it stopped. The officer observed several pieces of clothing in the area of the black BMW including a red shirt and a brown ball cap. The officer testified that he began a search for the suspects that eventually centered on the dumpster area and found two people inside and they were taken into custody as suspects in the Subway robbery.

The two suspects arrested at the dumpster were described by Officer Young as dressed in basketball shorts and T-shirt. Officer Young testified that there was a light drizzle at the time of the search and that the suspects were wet. Officer Young identified [petitioner] as one of the men he arrested at the dumpster. On cross-examination, Officer Young testified that one other black male was detained that was a couple of blocks from the area for questioning.

Sergeant David Edwards of the Cleveland Police Department testified that he also responded to the call at the Subway and became the third officer on the scene. It was Sergeant Edwards who recovered the red hoodie being the Subway along with the brown hat. The sergeant testified tennis shoes and clothing were identified as being taken into custody by Sergeant Edwards. Sergeant Edwards also testified that a firearm was located across the drainage ditch from where the brown hat was located.

Malcolm Brooks testified that he had been convicted of aggravated robbery in the Subway in Cleveland along with another aggravated robbery in Harris County that were running concurrent. Brooks testified that he received a deal from the State to have both his aggravated robbery cases run concurrent if he testified for the State against [petitioner]. For his testimony in this case Brooks testified that he received a 12 year sentence which was a sweetheart deal. Brooks testified that he was there during the Subway robbery with Deamonte Roberson and [petitioner]. Brooks testified that he went to the store with [petitioner] to get money. Brooks was arrested at the hospital where he was taken after injuring his knee while running from the crime scene.

Brooks testified that it was [petitioner] who possessed the gun during the robbery. He further testified that when he saw the police officer outside he ran out the back door and got into the get away car that was parked on the side of the building. Brooks testified that the robbery was planned on the scene as they had driven to Cleveland from Houston and that he was the leader of the group.

Jenna Shephard testified on behalf of ]petitioner] and said she had known [petitioner] for about seven years. She testified that [petitioner] had tattoos that were distinctive on his face and hands that were clearly visible.

Docket. No. 13-6 at 6-11.

In addition, the intermediate appellate court described the evidence supporting petitioner's guilt as follows:

One of the men at the Subway, described as a black male with the lower part of his face covered by a cloth, wore a red hoodie, pointed a gun at a Subway employee, took an unknown sum of money from the cash box, ran out the front door when a policeman arrived, and jumped into the BMW;

The BMW sped off, turned right into an alley behind the Subway that dead-ended at a creek, also described as a drainage ditch;

When the car became stuck, the men abandoned it and headed toward the creek and a Super 8 Motel on the other side of the creek;

There was a trail of clothes from the BWM to the Super 8, including a red T-shirt near the getaway car, a brown hat, a black shirt, and a red hoodie found on a bush at the Super 8;

A firearm was found along the creek bank where the police determined the suspects crossed;

Approximately twenty minutes after the robbery occurred, two men were found lying on the ground by a dumpster on the other side of the creek near a McDonald's restaurant;

The two men were dressed in basketball shorts, T-shirts, and tennis shoes–clothing thought to be inappropriate for the cold weather that night;

One of the men was later identified as [petitioner];

Two pairs of jeans were found in the dumpster. The pants were soaking wet and money was found in the front pockets of one pair of jeans. Money was also scattered on the ground in that area;

The two men were taken into custody as suspects in the robbery, and a few blocks away, a third male was detained for questioning;

[Petitioner's] white and black tennis shoes were collected when he was booked into the jail;

[Petitioner's] shoes were extremely wet with debris and vegetation on them, similar to that found in the ravine where the creek divides and runs through the mall;

The Super 8 Motel security videos showed two black males coming from the creek area and running towards the McDonald's. Also shown was one man leaving a red hoodie at the motel; the red hoodie was later recovered by a police officer;

[Petitioner's] tennis shoes and the red hoodie recovered from the Super 8 Motel matched those seen on the Subway security videos; and

The Subway employee saw no identifying markers on the gunman's hand and only had an opportunity to glance at his face before he told her not to look at him.

*Burrell*, 2012 WL 3612500 at *2-3.

<u>Procedural Bar</u>

The respondent asserts that grounds for review 7, 9(a) and 9(c) should be dismissed as procedurally barred.

A state prisoner must normally exhaust all available state remedies before he can apply for federal habeas relief. *See Ex parte Royall*, 117 U.S. 241, 251 (1886); 28 U.S.C. §2254(b) and (c). To have exhausted his state remedies, a habeas petitioner must have fairly presented the substance of his claim to the highest state court. *Picard v. Connor*, 404 U.S. 270, 275 (1971).

A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default. If a state court clearly and expressly bases its dismissal of a petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). A procedural default also occurs when a prisoner fails to exhaust available state remedies and "the court to which the prisoner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred." *Id*. at 735, n. 1.

In *Ex parte Barber*, 879 S.W. 2d 889 (Tex.Crim.App. 1994), the Texas Court of Criminal Appeals announced that it would as a rule dismiss as an abuse of the writ a successive state application for writ of habeas corpus which raised issues that existed at the time a prisoner filed his initial state application. The United States Court of Appeals for the Fifth Circuit subsequently concluded Texas courts were regularly and strictly applying the abuse of the writ doctrine and that the doctrine could therefore be relied upon as an adequate and independent state ground forming the

basis for application of the procedural default doctrine. *Emery v. Johnson*, 139 F.3d 191, 195 (5th Cir. 1997); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995).

Petitioner did not raise grounds for review 7, 9(a) or 9(c) in either his petition for discretionary review or his state application for writ of habeas corpus As the Court of Criminal Appeals would not consider a second state application that asserted these grounds for review, and as petitioner has not shown sufficient cause and prejudice for failing to present these grounds for review to the highest state court, consideration of these grounds for review is procedurally barred.

<u>Remaining Grounds for Review</u>

Title 28 U.S.C. § 2254 authorizes a district court to entertain a petition for writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment if the prisoner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). The court may not grant relief on any claim that was adjudicated in state court proceedings unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id*. An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *Id*. at 409-411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's

contrary conclusion was unreasonable." *Id*. The Supreme Court has noted that this standard is difficult to meet "because it was meant to be." *Id*.

In addition, this court must accept as correct any factual determination made by the state courts unless the presumption of correctness is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951.

### 1. *Actual Innocence*

Initially, petitioner asserts he is actually innocent based upon newly discovered evidence. As indicated above Malcolm Brooks, who participated in the robbery, testified against petitioner at trial. Petitioner states Mr. Brooks has now submitted an affidavit stating he testified falsely at trial and that petitioner had no involvement in the robbery.[1] He further states Deamonte Roberson, another participant in the robbery, has submitted an affidavit supporting the affidavit from Mr. Brooks.

A freestanding claim of actual innocence is not a ground for federal habeas relief. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013); *Dowhitt v. Johnson*, 230 F.3d 733, 741 (5th Cir. 2000). As a result, this ground for review does not provide petitioner with a basis for relief in this proceeding.

### 2. *Ineffective Assistance of Counsel*

In order to establish an ineffective assistance of counsel claim, a petitioner must prove counsel's performance was deficient, and that the deficient performance prejudiced petitioner's

---

[1] At the evidentiary hearing held concerning petitioner's state application for writ of habeas corpus, Mr. Brooks retracted his affidavit.

defense. *Strickland v. Washington*, 466 U.S. 668 (1984). Because a petitioner must prove both deficient performance and prejudice, failure to prove either will be fatal to his claim. *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995).

Judicial review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. There is a strong presumption counsel rendered reasonable, professional assistance and that the challenged conduct was the result of a reasoned strategy. *Id*.; *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). To overcome the presumption that counsel provided reasonably effective assistance, a petitioner must prove counsel's performance was objectively unreasonable in light of the facts of the case. *Strickland*, 466 U.S. at 689-90. A reasonable professional judgment to pursue a certain strategy should not be second-guessed. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

In addition to demonstrating counsel's performance was deficient, a petitioner must also show prejudice resulting from the inadequate performance. *Strickland*, 466 U.S. at 691-92. A petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Analysis of an ineffective assistance claim on federal habeas review of a state court conviction is not the same as adjudicating the claim on direct review of a federal conviction. *Ritcher*, 131 S.Ct. at 785. The key question on habeas review is not whether counsel's performance fell below the *Strickland* standard, but whether the state court's application of *Strickland* was unreasonable. *Id*. Even if a petitioner has a strong case for granting relief, that does not mean the state court was unreasonable in denying relief. *Id*.

a. Failure to Investigate

Petitioner states counsel was ineffective for failing to investigate the facts of his case, the prosecutor's file and the evidence against him. He states one of his attorneys admitted to not listening to certain video/audio statements made by petitioner. Petitioner asserts that based on the record, it is clear neither of his attorneys conducted any investigation regarding his case. Nor did

they make any attempt to go beyond what was in the prosecution's file.

Petitioner states he was prejudiced by counsel's failure because the video/audio statement revealed petitioner told the officer where he was while the robbery was being committed. He states that if counsel had been familiar with the statement and introduced it into evidence, the jury would have been able to hear his version of the events without him being subject to cross-examination. He also asserts counsel's failure to investigate the victim's statement prejudice him because in the statement, the victim gave a description of what she saw of one of the suspect's faces and that description did not match petitioner. However, as counsel were not aware of the contents of the statement, they could not point out the discrepancy to the jury.

These allegations are insufficient to demonstrate prejudice. If the defense had attempted to introduce the audio/video statement into evidence, it would have been excluded because the statements made by petitioner therein constituted inadmissible hearsay. Further, as explained on the next page, it is not clear that any prior misstatement the victim might have made concerning a suspect's fact would have been of material benefit to petitioner. As result, even if it assumed counsel failed to examine the video/audio statement and the victim's statement to police, it cannot be concluded there is a reasonable probability the petitioner would have been acquitted if such statements had been examined.

Petitioner was represented by two attorneys at trial, Allie Booker and Robert Ray. Both attorneys testified at the evidentiary hearing held in connection with petitioner's state application for writ of habeas corpus. Ms. Booker testified she examined the prosecution's file in accordance with the open file policy of the prosecutor and read all applicable statements. She also testified she went to the Subway where the robbery took place. In addition, she determined how close the Walmart[2] was to the Subway and went by the McDonald's where the dumpster area petitioner was found in was located. Mr. Ray testified that he examined the prosecution's file prior to trial.

---

[2]    Petitioner's alibi was that he was dropped off at a Walmart prior to the robbery.

Following the hearing, the state habeas trial court found the testimony of Ms. Booker and Mr. Ray to be credible and concluded each attorney provide effective assistance of counsel. As stated above, the Court of Criminal Appeals relied on this finding in denying petitioner's state application for writ of habeas corpus. Petitioner has failed to demonstrate the state habeas trial court's factual finding was an unreasonable determination of the facts in light of the evidence before the court. Nor has he shown that the rejection of this ground for review by the state courts was contrary to, or an unreasonable application of, clearly established federal law. This ground for review is therefore without merit.

     b. <u>Failure to Properly Cross-Examine Witnesses</u>

Petitioner contends counsel failed to properly cross-examine 3 witnesses: (1) Ms. Mayhew, the victim; (2) Officer Young and (3) Mr. Brooks.

Petitioner states that on the night of the offense, Ms. Mayhew gave a statement describing the suspect as having bushy eyebrows. He asserts this description was not brought up during direct examination and that his attorney made no reference to it during cross-examination.

It does not appear that the statement to which petitioner refers is part of the record. However, even if it is assumed Ms. Mayhew told the police that a suspect had bushy eyebrows, petitioner has not demonstrated he suffered prejudice because counsel did not ask about this during cross-examination. At the time Ms. Mayhew made the statement to police, she would have been under a good bit of stress. In addition, she testified she was only able to glance briefly at the robber's face. Her making a misstatement about a suspect's eyebrows would therefore not be surprising. Ms. Mayhew made no attempt to identify petitioner as one of the robbers during her testimony. In light of the circumstances under which Ms. Mayhew made her statement, her failure to attempt to identify petitioner during her testimony and the other evidence in the case, as has been described above, there is not a reasonable probability the result of the proceeding would have been different if counsel had cross-examined Ms. Mayhew about a prior statement that a suspect had bushy eyebrows.

Petitioner states the evidence at trial indicated the 911 call came in shortly before 9:00 p.m. He states that in his report, Officer Young said he arrested petitioner at 10:00 p.m. Petitioner states that at trial, Officer Young testified he arrested petitioner approximately 20 minutes after receiving a call about the robbery. He states Sergeant Edwards testified Officer Young was already at the scene of the robbery when he arrived at approximately 9:00 p.m. Sergeant Edwards testified about an hour elapsed before petitioner was arrested. Petitioner states Officer Young's testimony that only 20 minutes elapsed before he was found and arrested permitted the prosecution to argue there was not enough time for petitioner to have changed clothes and showered between the time of the robbery and the time when he was found.

The discrepancy between what the report allegedly said about how much time elapsed between the time of the robbery and the time of petitioner's arrest, and Officer Young's testimony about how much time elapsed, was relatively minor. Further, there is no indication in the record of how or where petitioner could have showered and changed even if an hour elapsed between the time of the robbery and the time of his arrest. Based on this, as well as the additional evidence in the case, there is not a reasonable probability the result of the proceeding would have been different if Officer Young had been cross-examined concerning the discrepancy between his report and his testimony as to how much time elapsed.

With respect to Mr. Brooks, petitioner faults counsel for not eliciting from him the fact that he was on probation based upon a conviction for aggravated robbery at the time of the robbery.

The jury was informed Mr. Brooks had been convicted for aggravated robbery based on the robbery of the Subway and also had an aggravated robbery conviction from Harris County. In addition, the jury was told Mr. Brooks had multiple juvenile convictions and a prior adult conviction for trespassing. As the jury was made aware Mr. Brooks had been convicted of crimes in the past, there is not a reasonable probability the result of the proceeding would have been different if they had also been informed he was on probation at the time of the Subway robbery. Petitioner has therefore failed to show he suffered prejudice as a result of counsel not eliciting testimony that Mr.

Brooks was on probation at the time of the robbery.

### c. Denial of Right to Testify

Petitioner states counsel never told him that he had an absolute right to testify and that only he could waive that right. He states counsel refused to call him to testify even though he repeatedly told counsel he wanted to testify.

Mr. Ray testified at the hearing regarding petitioner's state application for writ of habeas corpus that he and Ms. Booker told petitioner he had the right to testify and explained the advantages and disadvantages of testifying. He stated petitioner chose not to testify. After stating on direct examination that she did not remember speaking with petitioner about whether or not he should testify, Ms. Booker stated on cross-examination that petitioner was told he had the right to testify and that the advantages and disadvantages of testifying were explained to him. She stated petitioner chose not to testify. Petitioner stated at the hearing that he told Ms. Booker he wanted to testify.

As stated above, the state habeas trial court found the testimony of Ms. Booker and Mr. Ray to be credible and concluded they provided effective assistance of counsel. The court also found petitioner's testimony to not be credible. Petitioner has not shown the court's factual findings were unreasonable in light of the evidence before the court. Nor has he established that the rejection of this ground for review by the state courts was contrary to, or an unreasonable application of, clearly established federal law. This ground for review therefore does not provide petitioner with a basis for relief.

### d. Failure to Investigate, Interview and Subpoena Alibi Witness

Petitioner contends Mr. Roberson, who participated in the robbery, told him he was prepared to testify that petitioner had no involvement in the robbery. He states he made counsel aware of this fact. Despite this, counsel made no attempt to investigate the matter or interview Mr. Roberson. Nor did counsel call Mr. Roberson to testify at trial.

The state habeas trial court found that the affidavit testimony of Mr. Roberson was not credible. This factual finding was not unreasonable in light of the evidence before the court. This

finding would have led to the conclusion that as Mr. Roberson's statements were not credible, there is not a reasonable probability that if Mr. Roberson had testified at trial the jury would have believed his testimony and acquitted petitioner. As a result, the state courts' rejection of this ground for review was not contrary to, or an unreasonable application of, clearly established federal law.

3. *Ineffective Assistance of Counsel on Appeal*

Petitioner states counsel raised two arguments on appeal: (a) improper argument by the prosecution during the sentencing phase of the proceedings and (b) the evidence was factually insufficient to support the verdict. He complains that the first argument was rejected as procedurally barred. He states that as appellate counsel also represented him at trial, they were subject to a conflict because they could not argue the procedural bar was the result on ineffective assistance of counsel for failing to properly preserve the error. He further complains that the factual insufficiency argument was ineffective because a few years prior to his appeal, Texas law had been changed to limit challenges to the sufficiency of the evidence to challenges to the legal insufficiency of the evidence.

Petitioner correctly states that the intermediate appellate court concluded his argument regarding improper jury argument was procedurally barred because the argument was not properly preserved for appeal. However, the court went on to conclude that even if the argument was properly preserved, it was without merit because the trial court did not abuse its discretion by overruling petitioner's objections to the argument. As a result, petitioner suffered no prejudice as a result of counsel failing to argue that the failure to properly preserve the argument constituted ineffective assistance of counsel because even if the appellate court found this argument meritorious, it still would have overruled this ground for review on the merits.

Petitioner is also correct in stating that under current Texas practice, challenges to the sufficiency of the evidence is now limited to challenges to the legal sufficiency of the evidence. The test for whether the evidence is legally sufficient to support a conviction is that set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). The intermediate appellate court reviewed petitioner's sufficiency

of the evidence challenge under the *Jackson* standard and concluded a rational jury could have found petitioner was the person who committed the aggravated robbery and was therefore guilty of the offense beyond a reasonable doubt. As the appellate court reviewed petitioner's sufficiency of the evidence challenge under the appropriate legal standard. he suffered no prejudice as a result of counsel describing this challenge as being based on factual rather than legal insufficiency.[3]

### 4. *Ineffective Assistance at the Sentencing Phase*

Petitioner also complains counsel was ineffective at the sentencing phase of the proceedings. He states counsel failed to take steps to ensure his family members, including his mother, would be able to testify on his behalf during the sentencing phase. He states his mother was scheduled for surgery on December 13, 2011, the day after his trial started. He states counsel told his mother and him that trial would begin and end on December 12, and that his mother would therefore be available to tesify. Petitioner states that once it became apparent trial would not conclude on December 12, Ms. Booker told petitioner's mother she could go ahead with her surgery because as petitioner was going to be acquitted, there would be no sentencing phase. Petitioner complains that after he was found guilty, counsel failed to request a continuance so that his mother and other family members who were with her at the hospital could testify on his behalf.

Petitioner also complains that counsel failed to subpoena any of his character witnesses so that they could be excused from work or school. He also states counsel never interviewed his character witnesses.

Ms. Booker testified at the evidentiary hearing she expected 4-5 of petitioner's family members to appear for sentencing, but that only 2 family members appeared. She stated she was under the impression petitioner's mother could have rescheduled her surgery. She believed

---

[3]    Petitioner also asserts counsel should have based his argument on the prosecutor improperly asserting the legislature gave the jury wide latitude in determining petitioner's sentence before going on to suggest that the jury start in the middle of the sentencing range before going down if the defendant has previously led an admirable life. However, it appears clear that the prosecutor was stating the legislature provided for a wide sentencing range, not that the legislature suggested the jury should start in the middle of the sentencing range in determining an appropriate sentence. Accordingly, counsel's failure to base his argument as petitioner suggests did not fall below an objective standard of reasonableness and did not cause petitioner to suffer prejudice.

petitioner's mother scheduled her surgery during the trial because she did not want to testify. Ms. Booker also stated petitioner did not provide the names of any character witnesses other than family. Petitioner and his mother testified that she would have been willing to testify.

As stated above, the state habeas trial court found Ms. Booker's testimony to be credible and petitioner's testimony to not be credible. This finding was not unreasonable in light of the evidence before the state court.

Further, in order to show *Strickland* prejudice in the state sentencing context, a habeas petitioner must establish there is a reasonable probability that, absent counsel's error, the sentence imposed would have been "significantly less harsh." *Spriggs v. Collins*, 993 F.2d 85, 88-89 (5th Cir. 1993). The *Spriggs* standard applies to this case because petitioner is complaining of a state sentencing proceeding rather than a federal one. *United State v. Grammas*, 376 F.3d 433, 438 & n.4 (5th Cir. 2004) (holding that *Glover v. United States*, 531 U.S. 198 (2001), abrogates the significantly less harsh test only in the federal sentencing context).

The jury was told petitioner was 22 or 23 years old at the time of sentencing. The jury was also told petitioner had previously been convicted of: (1) evading arrest with a motor vehicle; (2) possessing less than 1 gram of cocaine; (3) burglary of a motor vehicle; (4) escape while arrested or confined; (5) possessing 1-4 grams of cocaine; (5) theft of between $1,500 and $20,000 and (6) possessing a fictitious license plate. He also had two prior convictions for possessing marijuana. The sentence petitioner received was in the upper portion of the sentencing range. Further, some of petitioner's prior convictions were for relatively minor offenses and do not appear to have been violent in nature. However, in light of the testimony the jury heard concerning the offense for which petitioner had been convicted, and his lengthy list of convictions compiled at a relatively young age, there is not a reasonable probability he would have received a significantly less harsher sentence if family members and additional character witnesses had testified during the sentencing phase. He therefore did not suffer prejudice as result of their not testifying.

Finally, petitioner states counsel failed to object to improper jury argument by the prosecutor during the sentencing phase. Petitioner complains of four arguments made by the prosecutor. First, petitioner complains the prosecutor stated the gun used in the robbery had five bullets and that every bullet should be viewed as a potential innocent victim. The prosecutor told the jury that their sentence should be viewed as saving five potential victims. Second, petitioner complains the prosecutor stated that in light of the five bullets in ths gun, the jury should realize that the only difference between this case and a capital murder case was pulling the trigger. Third, petitioner states the prosecutor improperly stated that as petitioner had not received sufficiently long sentences for his prior convictions, five people could have potentially died and that, as a result of their opportunity to sentence petitioner, the jury could stop him. Finally, the prosecutor stated the jury's sentence could provide them with peace of mind that those five bullets would never come into play. Petitioner faults counsel for failing to object to these arguments. In addition, petitioner complains that the prosecutor told the jury to begin in the middle of the sentencing range and go up or down based upon petitioner's prior actions. While petitioner acknowledges counsel objected to this argument, he complains that, as previously stated, counsel failed to properly preserve the point for appeal.

As previously stated, the jury was told petitioner had a long list of convictions at a relatively young age. Based on this, as well as the nature of the crime for which petitioner was convicted, there is not a reasonable probability petitioner would have received a significantly less harsh sentence if an objection to the prosecutor's argument had been sustained. Further, as it is not clear the arguments cited by petitioner were necessarily improper, counsel's failure to object to the arguments did not fall below an objective standard of reasonableness.

5. *Failure to Communicate Plea Offer*

Petitioner states that when Ms. Booker and Mr. Ray first entered the case, the prosecution offered to accept a plea of guilty whereby petitioner would be sentenced to 10 years of imprisonment. He states that without conducting any investigation or reviewing the prosecution's file, Ms. Booker

advised him to reject the plea offer and promised him the case would be dismissed. He contends that in the absence of any investigation into his case, Ms. Booker was in no position to give him such advice.

Mr. Ray testified he told petitioner about the plea offer and explained it to him. He states petitioner rejected the offer. Ms. Booker also testified petitioner was told about the offer. She stated petitioner did not take the offer seriously and rejected it. She stated she begged petitioner to take the offer. In his own testimony, petitioner acknowledged Ms. Booker told him about the offer and that he rejected it.

It is clear the plea offer was communicated to petitioner and that he rejected it. Petitioner faults Ms. Booker for telling him to reject the offer. However, the state habeas trial court found Ms. Booker's testimony that she advised petitioner to accept the offer to be credible. Petitioner has not rebutted this finding by clear and convincing evidence and it cannot be concluded the finding was unreasonable or that the rejection of this ground for review was contrary to, or an unreasonable application of, clearly established federal law. This ground for review is therefore without merit.

6. *Ineffective Assistance*

a. <u>Failure to Investigate DNA Evidence</u>

Petitioner states the prosecution had custody of the red hoodie believed to be worn by one of the robbers. While the hoodie had been sent to a laboratory for testing, the prosecution informed defense counsel that it did not intend to wait for the testing to be completed before commencing trial. Petitioner contends counsel should have arranged for DNA testing to be completed before trial started.

Mr. Ray testified the prosecution elected not to test the hoodie for DNA. He acknowledged that the hoodie might have contained epithelial cells that could have been tested to determine whether petitioner had worn the hoodie. He said Ms. Booker elected not to have the hoodie tested because she was not certain whether the results of the test would have been exculpatory.

While a test showing the petitioner's DNA was not on the hoodie would have benefitted petitioner's case, the prosecution could still have argued petitioner had simply left no DNA behind. In contrast, a test showing petitioner's DNA was on the hoodie would have been extremely damaging. While reasonable minds could perhaps disagree with th decision Ms. Booker made, it was a reasoned, strategic decision. After considering all applicable factors, the court is unable to conclude her decision not to test the hoodie fell below an objective standard of reasonableness. Further, other than his own assertion, petitioner has provided no evidence indicating a DNA test would have been exculpatory. Accordingly, there is not a reasonable probability the result of the proceeding would have been different if a DNA test had been performed. Petitioner has therefore failed to establish the failure to perform a DNA test constituted ineffective assistance of counsel.

b. Failure to Investigate Prosecution Witnesses

Petitioner asserts counsel did not investigate or interview any of the prosecution witnesses prior to trial. He states this prevented counsel from being able to conduct effective cross-examination regarding prior inconsistent statements and criminal histories. He cites counsel's failure to cross-examine Mr. Brooks for being on probation, as well as the failure to cross-examine the victim for giving officers a description of the robbers that did not match petitioner. He also cites the failure to cross-examine Officer Young concerning the time of petitioner's arrest.

As explained above, the deficiencies petitioner identifies in counsel's cross-examination of Officer Young, Mr. Brooks and the victim did not result in *Strickland* prejudice. Further, based on the findings of the state habeas trial court, counsel's pretrial investigation did not fall below an objective standard of reasonableness. This ground for review is therefore without merit.

c. Failure to Make Opening Statement

Petitioner faults counsel for failing to make an opening statement. He states such a statement would have permitted counsel to explain to the jury his alibi defense. He contends counsel failed to make an opening statement because they had not decided whether or not to pursue an alibi defense.

18

As stated above, petitioner's alibi defense was that he had been dropped off at a Walmart before the robbery was committed. Ms. Booker asked Mr. Brooks whether this was true, but Mr. Brooks gave a negative response. As a result, the defense had no evidence to support an alibi defense. Based on this, it did not fall below an objective standard of reasonableness for counsel to not make an opening statement asserting an alibi defense because she was not sure the evidence would support such a defense. It is likely the prosecutor would have noted the failure in closing argument if the defense had raised an alibi defense but failed to support it. The failure to have any evidence to support the alibi defense also prevents the conclusion that petitioner suffered prejudice because an opening statement raising an alibi defense was not made.

d. Failure to Establish Alibi and Identify Defenses

Petitioner also faults counsel for failing to properly establish his alibi and identify defenses. He states counsel should have called Mr. Roberson to testify in support of his alibi. Further, as stated above, Ms. Booker received a negative response when she asked Mr. Brooks whether petitioner had been dropped of at a Walmart prior to the robbery. He states counsel should have been able to elicit the truth from Mr. Brooks on cross-examination. Petitioner also asserts counsel should have called him testify and played his video/audio statement for the jury. Finally, he states counsel should have elicited testimony from the victim regarding the prior statement she gave to the police regarding a description she provided that did not match petitioner.

As explained above, the defense would not have been able to introduce the video/audio statement into evidence. In addition, petitioner does not explain what Ms. Booker should have done to force Mr. Brooks to admit the truth. Further, as also explained above, as the state habeas trial court concluded Mr. Roberson's affidavit testimony was not credible, the conclusion by the state courts that not calling Mr. Roberson to testify did not result in prejudice was not contrary to, or an unreasonable application of, clearly established federal law. Finally, as previously explained, the failure to ask the victim about her prior statement did not result in prejudice.

e. <u>Failure to Object to Closing Argument</u>

Petitioner describes what he believes to be two improper arguments made by the prosecution during the guilt/innocence phase of the proceedings. In the first argument, the prosecutor stated:

> You saw Mr. Brooks. Of course, when he was first arrested by the police he said, "I don't know anything you guys are talking about." Now he has come to realize obviously his best bet and best move for him was to come here and tell you the truth. That's it.
>
> If he lies on the stand, we know aggravated perjury charge, another felony charge. He has no reason to lie. He's already been convicted of the offense. He's already been punished for the offense. The only thing he can do by lying is get himself in more trouble.

Reporter's Record ("RR"), Vol. 4 at 113.

In the second argument, the prosecutor stated:

> Now, Malcolm Jamal Brooks is a convicted felon. Don't get me wrong. Defense wants to say he's not serving a day for this crime, but she doesn't know what took place in the plea negotiations with Harris County and Liberty County in exchange for him to testify in this case.
>
> He cut a deal with me to run with what we did over there to testify in this case. Now, he didn't do that one over there until he did this one. That was his testimony. he was not a convicted felon until he pled in that case over there as part of this one.
>
> So you're not supposed to believe Malcolm Jamal Brooks because he's a convicted felon. He cut his losses. He's not a dumb man. He realized why should I serve one day in prison over something I did if I can cut my time.
>
> He did and he told you what happened and the robbery is over with and they leave.

RR, Vol. 4 at 130.

Petitioner asserts that in the first argument, the prosecutor is improperly vouching for the credibility of his witness. He also complains that when the prosecutor said Mr. Brooks would be charged with aggravated perjury if he lied, he was implying to the jury since Mr. Brooks had not been charged with aggravated perjury, he was not lying. Further, he states that despite what the prosecutor said, Mr. Brooks had every reason to lie because if he had not falsely testified petitioner participated in the robbery, he would not have received a deal. With respect to the second argument, petitioner states that when the prosecutor said defense counsel did not know what had occurred during plea negotiations involving Harris County and Liberty County, he was improperly referring

to facts that were not part of the record. Finally, petitioner states the prosecutor lied when he stated Mr. Brooks was not a convicted felon until he entered a plea in the Harris County case. Petitioner states Mr. Brooks was on probation at the time the Subway was robbed. Petitioner states counsel should have used these arguments to object to the statements made by the prosecutor.

With respect to the prosecutor's first argument, the prosecutor was not vouching for the credibility of his witness. He did not say that the jury should believe Mr. Brooks because he believed him. Instead, he explained to the jury why, based on the evidence, it was in Mr. Brooks' self-interest to testify truthfully. In addition, the prosecutor's remark about Mr. Brooks being charged with aggravated perjury if he testified falsely was not improper.

With respect to the second argument, there is no evidence in the record demonstrating Mr. Brooks was on probation at the time of the robbery. As a result, it cannot be concluded the prosecutor's statement that he was not a convicted felon until he entered a plea in the Harris County case was false. Nor can it be concluded the prosecutor's statement regarding plea negotiations was improper.

As the arguments cited by petitioner were not improper, counsel's failure to object to the arguments did not fall below an objective standard of reasonableness or result in prejudice. This ground for review is therefore without merit.

8. *Failure by Appellate Counsel to Raise Claims of Prosecutorial Misconduct*

Petitioner also contends counsel was ineffective on appeal for failing to complain about improper closing argument by the prosecutor during the guilt/innocence phase and the sentencing phase of the proceeding.

As explained above, the prosecutor's closing argument during the guilt/innocence phase of the proceedings was not improper. Further, the conclusion by the intermediate appellate court that the trial court did not abuse its discretion in overruling the objection to the argument regarding the jury starting in the middle of the sentencing range in order to determine an appropriate sentence was not contrary to, or an unreasonable application of, clearly established federal law. In addition, for

the reasons stated above, petitioner did not suffer prejudice as a result of counsel not objecting to the other parts of the sentencing phase closing argument petitioner asserts were improper. This ground for review is therefore without merit.

### 9. *Improper Closing Argument*

Finally, petitioner asserts the argument the prosecutor made recommending that the jury start in the middle of the sentencing range to arrive at an appropriate sentence constituted prosecutorial misconduct. However, as stated above, the intermediate appellate court concluded the trial court did not abuse its discretion in overruling the objection counsel made to this argument. Petitioner has failed to demonstrate that this conclusion was contrary to, or an unreasonable application of, clearly established federal law. As a result, this ground for review does not provide petitioner with a basis for relief.

### Conclusion

For the reasons set forth above, this petition for writ of habeas corpus is without merit. A final judgment denying the petition shall be entered.

In addition, the court is of the opinion petitioner is not entitled to a certificate of appealability. An appeal from a judgment denying federal habeas relief may not proceed unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253. The standard for a certificate of appealbility requires a petitioner to make a substantial showing of the denial of a federal constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Elizalde v. Dretke*, 362 F.3d 323, 328 (5th Cir. 2004). To make a substantial showing, the petitioner need not establish that he would prevail on the merits. Rather, he must demonstrate that the issues are subject to debate among jurists of reason, that a court could resolve the issues in a different manner, or that the questions presented are worthy of encouragement to proceed further. *See Slack*, 529 U.S. at 483-84. Any doubt regarding whether to grant a certificate of appealability should be resolved in favor of the petitioner. *See Miller v. Johnson*, 200 F.3d 272, 280-81 (5th Cir. 2000).

For the reasons set forth above, petitioner has not made a substantial showing of the denial of a constitutional right.  As a result, a certificate of appealability shall not issue.

So **ORDERED** and **SIGNED  September 12, 2018.**

_____
Ron Clark, Senior District Judge